SEEBER v. COMMERCIAL NAT. BANK OF OGDEN.

(Circuit Court, D. Utah. January 4, 1897.)

No. 133.

1. NATIONAL BANK—CONTRACT BY—AUTHORITY OF CASHIER—PLEADING—PROOF.

Under an allegation that the guaranty sued on was executed by the defendant bank in the name of its cashier, and that such cashier was authorized by a general usage to bind the bank to similar contracts, the plaintiff may prove any competent authority to the cashier, and is not restricted to proof of usage.

2. SAME—CONTRACT OF INDEMNITY—PUBLIC POLICY.

A contract by a national bank to indemnify one for loss incurred as surety on an attachment bond is not void on the ground of public policy, the loss having occurred, though the bond is not given for the benefit of the bank.

Marshall & Royle, for plaintiff.
Heywood & Tait, for defendant.

MARSHALL, District Judge. In the complaint in this action it is, in substance, alleged that one J. M. Taylor made to defendant his promissory note for $2,469.50; that one Oscar E. Hill was the cashier of the defendant bank; that thereafter, and, "as plaintiff is informed and believes, for the purpose of collecting said promissory note from said Taylor, who was then in the state of Missouri, defendant indorsed, transferred, and delivered said promissory note to said Hill, but that said Hill did not then, if he ever did, pay over to defendant any consideration for the transfer of said promissory note to him"; that by a commercial usage of the banks of Utah, where defendant was located and did business, and also of Lafayette county, Mo., where plaintiff resided, and by a general usage of banks, cashiers of banks were authorized and empowered to execute in behalf of their banks guaranties similar to the one sued on in this action; that said Oscar E. Hill instituted suit against J. M. Taylor to collect the said note, and in aid thereof sued out a writ of attachment, and that to obtain the writ he was forced to furnish a bond with sureties in the penal sum of $6,085. The complaint alleges "that for the purpose of procuring said bond said Commercial National Bank of Ogden, under the name and description of 'O. E. Hill, Cas.,' wrote two letters, which were duly received by the parties to whom they were addressed." These letters are set out in the complaint. One of them was addressed to the plaintiff as cashier, and the other to him individually. They each requested the plaintiff to furnish the necessary attachment bond, and agreed to hold him harmless from liability thereunder. The plaintiff, it is alleged, thereupon executed the bond as a surety, and procured others to become surety thereon by his promise to indemnify them. Such proceedings were subsequently had that the plaintiff and his co-sureties became liable for and paid the penal sum named in the bond, and the plaintiff thereafter repaid to his co-sureties the amounts paid by them. This suit was then instituted to recover on the defendant's promise to indemnify the plaintiff. The defendant has demurred generally to the complaint, and on the argument it was urged that the usage pleaded was not alleged to be known to defendant's board of directors, and hence was not a sufficient authority to Hill to bind the bank by a contract of guaranty.

The general principle is that "he who employs another to act for him at a particular place or market must be taken as intending that the business to be done will be done according to the usage and custom of that place or market, whether the principal in fact knew of the usage or custom or not." Note to Wigglesworth v. Dallison, 2 Smith, Lead. Cas. (Ed. 1868) 872. Or, as was stated by Littledale, J., in the leading case of Sutton v. Tatham, 10 Adol. & E. 27:

"A person who employs a broker must be supposed to give him authority to act as other brokers do. It does not matter whether or not he himself is acquainted with the rules by which brokers are governed." Steamship Co. v. Dempsey, 1 C. P. Div. 654; Walsh v. Transportation Co., 52 Mo. 434; Wadley v. Davis, 63 Barb. 501.

With respect to annexing incidents to a contract it is said in Jones, Com. & Tr. Cont. p. 168:

"In such cases, therefore, it is not necessary to show actual knowledge or facts which will justify a finding by the jury that there was actual knowledge, for the theory upon which this proof of usage is admitted is that it annexes to the contract incidents which each party was justified in assuming were within the knowledge of the other."

If the usage be a local or particular one, it could not be assumed to be within the knowledge of the contracting parties, and such knowledge would have to be alleged and proved. Iron Co. v. Blake, 144 U. S. 476, 12 Sup. Ct. 731. But the usage relied on must be reasonable, or it will not be given effect; and on the question of its reasonableness great weight is given to the knowledge the party to be affected by it had of the usage. A usage unreasonable under ordinary circumstances might yet be properly enforced against one who acted on the faith of its validity and intended to be bound by it. In the case of Robinson v. Mollett, L. R. 7 H. L. 817, Lord Esher has stated the rule with great clearness:

"A mercantile custom is hardly ever invoked but when one of the parties to the dispute has not, in fact, had his attention called to the course of business to be enforced by it; for, if his attention had in fact been called to such course of business, his contract would be specifically made in accordance with it, and no proof of it as a custom would be necessary. A stranger to a locality or trade or market is not held to be bound by the custom of such locality, trade, or market because he knows the custom, but because he has elected to enter into transactions in a locality, trade, or market wherein all who are not strangers do know and act upon such customs. When considerable numbers of men of business carry on one side of a particular business, they are apt to set up a custom which acts very much in favor of their side of the business. So long as they do not infringe some fundamental principle of right and wrong, they may establish such a custom; but if, on dispute before a legal forum, it is found that they are endeavoring to enforce some rule of conduct which is so entirely in favor of their side that it is fundamentally unjust to the other side, the courts have always determined that such a custom, if sought to be enforced against a person in fact ignorant of it, is unreasonable, contrary to law, and void."

This principle was applied by the supreme court of the United States in Irwin v. Williar, 110 U. S. 499, 4 Sup. Ct. 160, and in Allen v. Bank, 120 U. S. 20, 7 Sup. Ct. 460.

In this case there would be force in the argument that the usage pleaded is unreasonable when alleged against one actually ignorant of it, because it authorized the making of contracts beyond the corporate power of the bank, and which might subject it to a forfeiture of its corporate franchise. And, indeed, if the usage is claimed to warrant the cashier of the bank binding it by a guaranty for his individual benefit, it would be plainly unreasonable. But it is alleged in the complaint that the defendant, under the name of "O. E. Hill, Cas.," wrote the two letters relied on as a guaranty in this action. This is an allegation of the ultimate fact, and is admitted by the demurrer to be true. Under this averment the plaintiff could give in evidence any appropriate authorization, and would not be limited to proof of usage. The allegations as to usage might be treated as surplusage, or, indeed, stricken out; and the averment that the letters were the act of the defendant would remain to admit proof of its liability, provided the contract alleged is not void. But it is further claimed that, admitting the contract to have been authorized, it is yet void because of the want of corporate power in

the defendant to make it. The complaint alleges an absolute transfer of the note to Hill. It does not allege that he took it in trust for the bank, nor does it show any liability of the bank as indorser thereon at the time of the institution of the suit against Taylor. It is true that the plaintiff alleges that he is informed and believes that the transfer to Hill was for the purposes of collection. But this is no averment of the fact. The allegation seems purposely vague, and should be construed against the pleader. So that the contract alleged is one where the defendant has assumed to act as guarantor in a transaction in which it had no interest. This act was entirely outside of its chartered powers. Bank v. Smith, 77 Fed. 129; 4 Thomp. Corp. § 5721. The plaintiff was advised by the very nature of the transaction that it was in excess of the authorized powers of a national bank. Does it follow that the contract is void? In considering this, it must not be complicated with any question of agency. That question may arise on the trial of the action, but not on this demurrer. By the common law no association which was not chartered by the sovereignty or legislature could lawfully assume corporate powers. The prohibition was based on public policy. In becoming a corporation the associates escaped individual liability, and the rule was intended to prevent this, except under such safeguards and conditions as the legislature might impose. Whenever a corporation chartered to do one kind of business embarks upon another, it infringes the same rule. As to the new business, it has no legislative authority to act. But its acts in the new business, provided there be no legislative prohibition, will only be held void so far as public policy requires it. The rule itself, being based on public policy, will not be permitted to be invoked to perpetrate a wrong. So far as neither party has executed the contract, it is entirely consistent with public policy to avoid it. But where the other party has executed the contract, or has altered his position on the faith of it, the repudiation of the contract by the corporation is inconsistent with that honesty which is the highest public policy. In such a case the contract should be enforced, even if, by its terms, the consideration did not move to the corporation. State Board of Agriculture v. Citizens' St. Ry. Co., 47 Ind. 407; Railway Co. v. McCarthy, 96 U. S. 267; Arms Co. v. Barlow, 63 N. Y. 62; 2 Mor. Priv. Corp. 689. If the contract itself be immoral, or prohibited by statute, or if it would not be enforced against a private person under similar circumstances, of course it will not then be enforced against the corporation. Railroad companies and other corporations owing specific duties to the public will not be permitted to disable themselves to discharge such duties without the consent of the legislature. Any contracts made by such associations, and having such an effect, may at any time be repudiated by either party, for a continued performance of the contract involves a continued violation of law. Thomas v. Railroad Co., 101 U. S. 86. But in the case at bar the contract can only affect the defendant, its stockholders and creditors. It has been fully performed by the plaintiff, and public policy does not, in my judgment, require that it should be held void. The demurrer will be overruled.