BRADFORD v. HANOVER FIRE INS. CO. OF CITY OF NEW YORK.

(Circuit Court of Appeals, Third Circuit. May 14, 1900.)

No. 25.

1. PRINCIPAL AND AGENT—LIABILITY OF PRINCIPAL FOR TORTS OF AGENT.

A principal, authorized to countersign and issue policies of an insurance company, cannot be held responsible for the act of his agent in forging his signature to a policy, and delivering the same without his consent, ratification, or knowledge, unless upon some ground of estoppel.

2. SAME—ESTOPPEL OF PRINCIPAL TO REPUDIATE ACT OF AGENT—APPARENT SCOPE OF AGENCY.

Defendant, who was an insurance agent, and as such intrusted by plaintiff, an insurance company, with policies which he was authorized to countersign and issue, employed a clerk in his office who was authorized by him "to solicit insurance, to collect premiums, and to deliver policies." Such clerk forged defendant's signature to a policy of plaintiff, delivered the same, and collected the premiums thereon, but did not report the fact to defendant, who had no knowledge of it until after the insured property had been destroyed by fire, and the issuance of the policy was not reported to plaintiff. So far as appeared, defendant had no prior cause to distrust the integrity of the clerk. Held, that defendant had not clothed the clerk with any apparent authority by which he could be bound by the act of the clerk in signing the policy, or in delivering a forged policy, and that he had been guilty of no act of negligence which estopped him to repudiate the acts of the clerk as his agent, and that such acts were not binding, therefore, either upon him or upon the company.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Joseph M. Swearingen, for plaintiff in error.

Henry Hice, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

DALLAS, Circuit Judge. The proceeding under review is an action of tort. It was brought by an insurance company, the defendant in error, against the plaintiff in error, to recover "damages resulting from the defendant's negligence and misfeasance in the discharge of his duties as agent of the plaintiff company in the business of insuring the owners of property, real and personal, from loss by fire." The cause of action as more specifically alleged was that, although the defendant had been instructed to insure no potteries, "yet the said defendant, well knowing his instructions and his duty in the premises, and wholly disregarding the same, negligently, wrongfully, and fraudulently issued" a policy of the plaintiff company, insuring the owners of a certain pottery against loss thereof by fire. The plea was "Not guilty." In pursuance of a stipulation in writing, the cause was tried by the court without the intervention of a jury, and the facts were found to be as follows:

"(1) By an instrument dated April 20, 1887, the defendant was appointed and constituted the agent of the plaintiff company, with authority to receive proposals for insurance against loss and damage by fire in New Brighton, Pa., and vicinity, to fix rates of premium, to receive moneys, and to countersign, issue, and renew policies of insurance, signed by the president and attested by the secretary of the plaintiff company, subject to the rules and regulations of said company and such instructions as might from time to time be given by its officers. The defendant immediately accepted this appointment, and thereafter acted thereunder as the plaintiff's agent.

"(2) The defendant maintained an office at New Brighton, Pa., for the conduct of the insurance business, he being agent for several insurance companies, and in the prosecution of said business the defendant had in his employment one H. N. W. Hoyt, who not only did all the clerical work of said office, but also made daily reports of business to the plaintiff's general agents for the state of Pennsylvania at Wilkesbarre, and further, in the regular course of business and with the defendant's knowledge and by his authority, solicited insurance, collected premiums, and from time to time delivered policies of insurance to the persons insured.

"(3) The Mayer pottery works, situate in Beaver Falls, Pa., in the vicinity of New Brighton, had been insured by policies aggregating the sum of $15,-000, issued by companies other than the plaintiff company, and these policies the insured had procured through the defendant as the representative of the companies. Shortly before July 1, 1896, Joseph Mayer, one of the proprietors of those works, addressed a letter to the defendant at New Brighton, calling his attention to the fact that these policies would expire on the last-mentioned date, and desiring information whether he (the defendant) would continue the insurance in companies represented by him. In response to this letter the said H. N. W. Hoyt visited said Mayer, and informed him that the policies would be renewed; and on July 1, 1896, said Hoyt, acting on behalf of the defendant, brought to said Mayer and delivered to him six policies of insurance, amounting together to $15,000, against loss by fire upon the said pottery works and the contents thereof. One of the policies of insurance so delivered by said Hoyt to said Mayer was policy No. 307,782 of the Hanover Fire Insurance Company (the plaintiff company), dated July 1, 1896, signed by the president and attested by the secretary of the company, and purporting to be countersigned by Thomas Bradford, the defendant, as agent of the company, whereby, in consideration of the premium of $37.50, that company insured J. & E. Mayer and the Mayer Pottery Company, Limited, for the term of one year from July 1, 1896, against loss by fire to an amount not exceeding $2,500 to the Mayer pottery works, to wit, the pottery buildings and the contents of the same.

"(4) On the 8th day of July, 1896, the insured mailed a check for $225, the amount of the premiums on said six policies, payable to the order of Thomas Bradford, in a letter addressed to him at New Brighton. On July

11, 1896, this check, indorsed by said Hoyt thus: 'For the credit of Thomas Bradford, Agent,' was deposited by Hoyt in the defendant's bank, to the credit of the defendant as agent, in his bank account as agent. The check was paid by the drawer to the bank.

"(5) Such risks as that covered by said policy No. 307,782 on July 1, 1896, were and long had been prohibited by the plaintiff company, and the defendant knew of this prohibition. Long before July 1, 1896, the defendant had received instructions from the plaintiff company, through its proper officers, not to insure potteries.

"(6) Said policy No. 307,782 was not countersigned by the defendant personally, but said Hoyt countersigned the policy for and in the name of the defendant, by writing the defendant's name at the proper place. This he did without authority from the defendant, and without the defendant's knowledge. Hoyt delivered said policy to Mayer without the defendant's consent or knowledge. The defendant had no knowledge that this policy had been issued until after the fire and loss hereinafter to be mentioned.

"(7) The issuing of said policy No. 307,782 to J. & E. Mayer and the Mayer Pottery Company, Limited, was not reported to the plaintiff company, and the plaintiff had no knowledge whatever of the transaction until after the fire and loss had occurred.

"(8) On October 21, 1896, the said insured property of J. & E. Mayer and the Mayer Pottery Company, Limited, was destroyed by fire.

"(9) Afterwards suit was brought in the court of common pleas of Beaver county, Pa., at No. 224 of March term, 1897, by J. & E. Mayer and the Mayer Pottery Company, Limited, against the Hanover Fire Insurance Company (the plaintiff here), upon the said policy of insurance No. 307,782. On January 28, 1898, upon trial by jury, a verdict therein was rendered in favor of the plaintiff in the sum of $2,529.20, and on February 8, 1898, judgment was entered on the verdict against the defendant therein in the sum of $2,529.20 and costs, $43.16. On February 10, 1898, the defendant therein paid to the plaintiff therein the amount of the judgment and costs, namely $2,572.36.

"(10) Thomas Bradford, the defendant here, was not notified by the Hanover Fire Insurance Company to defend the said suit against the company upon the policy No. 307,782; but at the trial of that action he was called as a witness for the defense, and testified."

The court below rightly held that it was open to the defendant to show that the insurance company was not liable upon the policy in question, and therefore no question is presented under the tenth clause of the foregoing findings; but upon the facts stated in the preceding clauses judgment was entered in favor of the plaintiff for $2,803.87, and we are now to consider whether or not this judgment was well founded in point of law. The learned judge based it upon two grounds, and, as there is no other upon which it could have been rested, we may dispose of the case by examining those grounds separately.

1. The principal is civilly responsible for some, but not for all, acts of his agent. This responsibility extends to the tortious acts of the agent, but only where they are committed for the principal's purposes and by his authority, either actual or apparent, or where he ratifies them, or accepts and retains some benefit from them. Flower v. Railroad Co., 69 Pa. St. 210; Coal Co. v. Heeman, 86 Pa. St. 418; Brunner v. Telegraph Co., 151 Pa. St. 447, 25 Atl. 29; Hower v. Ulrich, 156 Pa. St. 412, 27 Atl. 37. In England, the principal's liability is, perhaps, somewhat more restricted. In his work on the Law of Torts, Pollock (Webb's Ed. p. 388) defines it thus:

"The necessary and sufficient condition of the master's responsibility is that the act or default of the servant or agent belonged to the class of acts

which he was put in the master's place to do, and was committed for the master's purposes."

But the decisions of the courts of this country have, we think, settled the rule in accordance with our statement of it, and with this in mind we pass to the consideration of the facts of the case.

The declaration alleged that "the defendant negligently, wrongfully, and fraudulently issued the said policy"; and upon the truth of this allegation the existence of the asserted right of recovery was absolutely dependent. Did the facts as found maintain it? Bradford, personally, "did not disregard his instructions, nor did he negligently, wrongfully, or fraudulently issue or cause to be issued the policy of insurance now in controversy." This the court found in its answer to one of the points submitted. Bradford, therefore, did not himself commit the tort which was the basis of the action. Did he do so by another? Hoyt, the actual tort feasor, was the agent of Bradford, with authority "to solicit insurance, to collect premiums, and to deliver policies." He forged the signature of Bradford to the policy, and he delivered that policy as and for a genuine one. But Bradford was not responsible for these unlawful acts merely because, for lawful purposes, Hoyt happened to be his agent. To make him responsible for them something more was requisite, and none of the conditions necessary to charge him was made to appear. Neither of the wrongful acts was committed for his purposes. The motive, whatever it was, was not his, but Hoyt's. It is also clear that Bradford neither expressly authorized them, nor ratified them, nor consented to profit by them.

But it is insisted that they were perpetrated in the line of Hoyt's employment, and with Bradford's apparent authority, and this contention presents the only serious question which is involved in the point now under consideration. Hoyt was not in fact authorized to sign Bradford's name, and the scope of his actual employment embraced the delivery only of policies which Bradford himself had signed. The signature in question was not so written as to indicate that it was made for Bradford, but as if made by him. It was simply a forgery. There was no assumption nor pretense of authority for it, and it is quite impossible to perceive that such authority apparently existed. The specific offense of Hoyt was one which Bradford himself was incapable of committing, and the act of the agent, therefore, was one which the principal not only could not have been justified in doing, but could not possibly have done. Seeber v. Bank (C. C.) 77 Fed. 957. Nor was Bradford responsible for Hoyt's delivery of this policy. He was authorized to deliver genuine policies,—not spurious ones; and of this particular transaction Bradford had no knowledge until after the fire and loss had occurred. If the forgery had been known by those to whom the policy was delivered, they certainly would not have been warranted in accepting it upon the supposition that its delivery was sanctioned by Bradford, or that, in making it, Hoyt was acting within the apparent scope of his employment. On the contrary, they must inevitably have seen that Bradford had not authorized it, and that Hoyt was grossly transcending the limits of his agency. The imposition which was consummated by the delivery

had its inception in the forgery, and by that alone was the delivery made possible. Bradford did not—manifestly could not—authorize the forging of his own signature; and, this being so, we are unable to discern, in his delegation of power to deliver policies bearing his genuine signature, any apparent authority for the delivery of one falsely and feloniously subscribed. In short, we are of opinion that, as Hoyt's principal, Bradford could be held liable, if at all, only upon the theory that the agency of Hoyt vested in him authority to sign the name of Bradford; and as such authority, either actual or apparent, did not exist, it remains only to consider whether Bradford is precluded from repudiating the transaction which Hoyt fraudulently effected.

2. "When any person, under a legal duty to any other person to conduct himself with reasonable caution in the transaction of any business, neglects that duty, and when the person to whom the duty is owing alters his position for the worse because he is misled as to the conduct of the negligent person by a fraud of which such neglect is in the natural course of things the proximate cause, the negligent person is not permitted to deny that he acted in the manner in which the other person was led by such fraud to believe him to act." Stephen, Ev. art. 102. This statement was intended (see note 38) to properly apply the doctrine of estoppel in pais to the case of a negligent act causing fraud, and we think that it does so. The vital principle of that doctrine is that:

"He who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted." Dickerson v. Colgrove, 100 U. S. 580, 25 L. Ed. 618.

And, in a case like the present, it is essential to the estoppel that the person sought to be estopped shall be legally chargeable with negligence which in the natural course of things caused the other person to be misled to his prejudice; and negligence in fact is, as to this point, the specific wrong expressly alleged in the declaration. But in what respect was Bradford negligent? The learned judge of the circuit court placed his liability upon the ground that he had "put the wrongdoer in a position of trust and confidence, and thus enabled him to perpetrate the wrong." We cannot assent to this. It was not pretended that Bradford was not duly careful in employing Hoyt or in retaining him in his employment. So far as appears, no ground existed for suspecting that he would abuse any confidence which was or might be reposed in him. Moreover, the signing of Bradford's name was not confided to him, nor had Bradford done anything to make it appear that it was. The policy was not accepted in reliance upon any seeming or supposed authority of Hoyt to sign, but under the belief that Bradford had signed it; and this misleading belief was caused, not by any negligent act or omission of Bradford, but solely by the personal criminal conduct of Hoyt. Bradford, it is true, had made Hoyt his agent; but surely negligence cannot be imputed to him upon that ground alone. Such agencies are by no means uncommon, and the reported cases exhibit many instances of them. There was no more reason for sup-

posing that the agent in this instance would be guilty of forgery than of any other offense, and his principal was under no obligation to prevent his commission of crime. The whole duty of Bradford in the matter was to see to it that no negligence of his own should, through any wrongdoing of Hoyt, occasion injury to another, and this duty does not appear to have been violated.

The true test of liability under this head was correctly applied by the supreme court of Pennsylvania in Leas v. Walls, 101 Pa. St. 57. In that case one person had procured another to sign a promissory note, partly printed and partly in writing. In the form used there was a long blank for the insertion of the amount. The person who obtained the note had, before its execution, inserted in this blank the written word "eight" and had filled up the remaining portion of the blank, except a small space immediately after that word, with a scroll terminating with the printed word "dollars"; but, after execution, he added to the word "eight" the letter "y," so that, as thus alterated, it read "eighty" dollars. The action was brought by a bona fide purchaser of the note for value and before maturity, and yet the finding of the jury that there was no lack of ordinary care on the part of the maker of the note was expressly approved by the supreme court, and the judgment for defendant, which was entered upon that verdict, was affirmed. In its opinion, after referring to some of its earlier decisions, the court said:

"These cases do not decide that the maker would be bound to a bona fide holder on a note fraudulently altered, however skillful that alteration might be, provided that he had himself used ordinary care and precaution. He would no more be responsible upon such an altered instrument than he would upon a skillful forgery of his handwriting. * * * In the common experience of men, very few persons write their words so closely together that a single letter cannot be added at the end of one of them without attracting attention."

And common experience, we think, equally supports our belief that no man of ordinary prudence would think of taking any precaution to preclude such a forgery of his signature as that for which the plaintiff in error in this case has been charged with responsibility.

We have examined a number of authorities, including those mentioned in the opinion of the court below and the additional cases cited by counsel; but we do not deem it necessary to further extend this opinion by reviewing them. It is enough to say that we have given them careful consideration, and are entirely satisfied that, as a whole, they show the law to be in accordance with the views we have expressed. The judgment of the circuit court is reversed, and the cause will be remanded to that court, with direction to enter a judgment for the defendant in the action.