McAdow v. Railway Co.

No. 20,772.

G. B. McADOW, *Appellee*, v. THE KANSAS CITY WESTERN RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. PLEADINGS—*Averment of Agent's Authority to Make Contract.* The usual form of averment, that the contract sued upon was made by "defendant's duly authorized agent," or words of like import, is sufficient to sustain evidence of any appropriate manner of authorization short of estoppel, which must generally be pleaded before evidence thereof is admissible.

2. RAILROADS—*Personal Injuries—Contract for Indemnity.* The former decision of this case, holding that "a railroad company has incidental power to contract with its own employees to pay them half wages during disability from service accidents" (*McAdow v. Railway Co.*, 96 Kan. 423, 151 Pac. 1113), is applied as the law of the case.

3. CONTRACT—*Made by Agent—Scope of Agent's Authority.* In this case it is held there was sufficient evidence to justify the giving of an instruction substantially following the law as declared in *Townsend v. Railway Co.*, 88 Kan. 260, syl. ¶ 2, 128 Pac. 389, that "an act is within the apparent scope of an agent's authority when a reasonably prudent person, having knowledge of the nature and usages of the business, is justified in supposing that he is authorized to perform it, from the character of the duties which are known to be entrusted to him."

4. AGENT—*May Not Ratify His Own Unauthorized Act.* It is a general rule that an agent can not ratify his unauthorized act so as to bind the principal. If the defendant's superintendent had no authority to bind the defendant by the contract in question, his statements made long afterward would not amount to a ratification; but evidence of his statements having been admitted solely for the purpose of proving a demand, it is held there was no prejudicial error.

5. NEW TRIAL—*Rejected Evidence Not Produced—No Review.* Error can not be predicated upon the rejection of testimony which is not produced at the hearing of the motion for a new trial. (Civ. Code, § 307.)

6. CONTRACT—*Indemnity—Evidence for Jury.* The evidence being substantially the same as in the former hearing of the case, it is held sufficient "to take to the jury the question whether a railway company had contracted with an employee to pay him half wages during any disability from an injury received in the course of his services." (*McAdow v. Railway Co.*, 96 Kan. 423, syl. ¶ 1, 151 Pac. 1113.)

7. EMPLOYER'S LIABILITY ACT—*Injuries to Servant—Damages Recovered—Subsequent Action on Indemnity Contract—Set-off.* The provision in the federal employers' liability act (section 5 of the amendment of

April 22, 1908), "that in any action brought against any such common carrier under or by virtue of any of the provisions of this Act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought" (Part 1, 35 U. S. Stat. at Large, ch. 149, § 5, p. 66; 8 U. S. Comp. Stat. 1916, § 8661), is construed; and *held*, that where a railway company has been sued under the federal statute by an employee to recover for injuries, it may not set off against the judgment the amount it owes such employee for insurance under a contract by which in consideration of retaining each month a portion of his usual wages it agrees to pay him half wages during certain periods that he is disabled by injuries in service; such contract containing no provision for releasing the company from its liability to such employee for injuries caused by its negligence.

Appeal from Wyandotte district court, division No. 1; ED-WARD L. FISCHER, judge. Opinion filed April 7, 1917. Affirmed.

*C. F. Hutchings,* and *McCabe Moore,* both of Kansas City, for the appellant.

*J. O. Emerson,* and *David J. Smith,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: G. B. McAdow was employed as a motorman, operating one of defendant's cars. On December 18, 1911, he was permanently injured in a collision between two cars resulting from the negligence of other employees of defendant. In an action brought by him in Jackson county, Missouri, under the act of congress known as the federal employers' liability law, he recovered a judgment against the defendant for $7500, which was paid and for which he gave his receipt "as full payment for all damages and injuries" sustained by reason of the accident.

In July, 1913, he brought this action in the district court of Wyandotte county, alleging that when he entered defendant's employ the superintendent of defendant, J. W. Richardson, orally agreed that defendant was to pay him the usual and ordinary wages of motormen in its employ, less fifty cents a month, and "one-half of such usual ordinary wages during such time, not to exceed fifty-two weeks at one period, as the

plaintiff was disabled from performing his usual and ordinary duties as motorman by reason of any injury that might be received by the plaintiff while in the performance of his regular duties." The petition then set forth the facts as to his injuries on December 18, 1911; that he was thereby disabled for more than fifty-two consecutive weeks, and alleged that by virtue of the oral contract defendant insured him for loss of time caused by such injuries and was indebted to him in the sum of $480.48 with interest, for which judgment was demanded.

The defendant's answer, besides a general denial, set up the judgment in the Missouri action and alleged that the matters in controversy here should have been litigated there. It expressly denied that its superintendent was authorized to make the oral contract relied upon by plaintiff. As a further defense it alleged that plaintiff is not entitled to maintain this action because of the provisions of the federal employers' liability law upon which the action in Missouri was based. Section 5 of the amendment of April 22, 1908, to the federal act provides:

"That in any action brought against any such common carrier under or by virtue of any of the provisions of this act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought." (Part 1, 35 U. S. Stat. at Large, ch. 149, § 5, p. 66; 8 U. S. Comp. Stat. 1916, § 8661.)

The answer alleged that in the Missouri action no sum of money which defendant paid to any insurance, relief benefit, or indemnity was set off or deducted from the amount of the judgment for $7500; that defendant had no knowledge or notice that plaintiff claimed or would claim defendant owed him any sum for insurance benefit or indemnity of any kind until after it had paid the judgment rendered against it in Missouri under the federal statute; that under the provisions of section 5 of the federal statute it was entitled to set off in that action all sums, if any, due plaintiff from defendant for insurance, relief benefit, or indemnity to which plaintiff was entitled on account of his injuries, and the same not having been deducted therefrom the plaintiff is not entitled to recover in the present action. The reply was a general denial.

The sole conflict in the evidence was over the questions, first, whether any contract such as plaintiff asserted was in fact made by the superintendent of defendant at the time plaintiff was employed; second, whether Richardson, the superintendent, was authorized to make such a contract. Upon these two issues the general verdict binds the defendant, unless one or more of the claims of error be sustained.

At the first trial of the case the court directed a verdict for the defendant. That ruling was reversed and the cause remanded for a new trial. (*McAdow v. Railway Co.*, 96 Kan. 423, 151 Pac. 1113.)

1. The first question relates to the pleadings. The demurrer to the evidence was based in part upon the contention that there was no competent evidence that Richardson was "duly authorized" to make the contract sued upon. There was a verified denial of his authority. That he was superintendent and was authorized to and did employ the plaintiff is conceded, but in the state of the pleadings it is urged these admissions are not sufficient to prove his authority or to justify an inference of his authority to enter into a contract binding the defendant to insure the plaintiff. In the same connection it is claimed that it was error to admit evidence of facts tending to prove that defendant was estopped to deny his authority. It is said that plaintiff might have chosen to allege facts which, if proved, would estop defendant from denying such authority; but having voluntarily chosen to allege that the superintendent was "duly authorized" to make the contract, it was incumbent upon him to prove the fact, even if an allegation to that effect was unnecessary; and that he can not rely upon an implied authority. The case of *Railway Co. v. Garrison*, 66 Kan. 625, 72 Pac. 225, and *Byland v. Powder Co.*, 93 Kan. 288, 144 Pac. 251, are cited. In the first of these cases the action was to recover against a railway company for fire damages, and the petition alleged negligence in the operation of the engine by which the fire escaped. A motion to make more definite and certain having been overruled, the allegation was held insufficient to support a finding of negligence in the use of a defective spark arrester, and in view of such finding the overruling of the motion was held error. In the Byland case it was held that plaintiff must prove

the specific act of negligence, and can not rely upon possible acts of negligence. In the case at bar there was no motion to require the petition made more definite. The expression "duly authorized" might mean expressly authorized, or authorized in any manner short of estoppel that would bind the defendant. In the absence at least of any motion to make more definite, we think the petition should be construed so as to permit evidence of implied as well as express authority, but not of estoppel to deny authority. The question of the authority of an agent "is one of evidence, not of pleading." (*Slevin et al. v. Reppy*, 46 Mo. 606.) In that case it was said: "The material fact set forth in the petition is that defendant made the note, not how he made it—whether by his own hand or that of his agent." So in the case at bar, plaintiff might have declared on the contract as made by defendant or by defendant through its agent. (16 Encyc. Pl. & Pr. 899.) In *Childress v. Emory*, 21 U. S. (8 Wheat.) 642, 670, it was said, in substance, that the better form of allegation is that the contract was entered into by defendant through his agent duly authorized by him in that behalf. In *Seeber v. Commercial Nat. Bank*, 77 Fed. 957, it was held that under an allegation that defendant, in the name of "O. E. Hill, Cas.," entered into the contract, any appropriate authorization may be given in evidence. The usual form of averment, that the contract was made by defendant's duly authorized agent, or words of like import, must be held sufficient to sustain evidence of any appropriate manner of authorization short at least of estoppel, which must generally be pleaded before evidence thereof is admissible.

2. The proof at both trials was substantially the same, and in the former opinion it was held that "a railroad corporation has incidental power to contract with its own employees to pay them half wages during disability resulting from service accidents." (*McAdow v. Railway Co.*, supra, syl. ¶ 3.) This declaration must be held to be the law of the case, and it follows, too, that if the corporation possesses such incidental power it has also the same power to make such a contract in consideration of an arrangement as to monthly payments from the wages of its employees as the plaintiff testified to in this case. Some of the evidence will be referred to in connection with an instruction.

3. The court gave the following instruction, which is, in substance, the law as declared in *Townsend v. Railway Co.*, 88 Kan. 260, syl. ¶ 2, 128 Pac. 389:

"If . . . you find from the evidence that from the character of the duties that were entrusted to said Richardson as superintendent of the defendant a reasonably prudent person, having knowledge of the nature and usages of the business in which the defendant was engaged, would have been justified in supposing that said Richardson, as superintendent, was authorized to make the contract with the plaintiff, which the plaintiff alleges was made, then you should find that such contract if made as alleged by plaintiff, was made with the authority of the defendant."

It is claimed this was error because no evidence of any character tending to show any usages or customs of the business of defendant would have tended in the slightest degree to justify the plaintiff in supposing that Richardson was authorized to make the contract. There was evidence that Richardson was superintendent in charge at Leavenworth; that he employed and discharged all motormen, and that his duties were to operate the road. He testified that he posted, over his own signature, general orders governing the men, and that from 1905 he had been taking fifty cents out of the men's checks each month for one-half pay in case of injury, and that this practice continued "as long as we carried that insurance." It is the contention of the defendant, or it was claimed by Richardson, that the company carried an insurance policy for the benefit of the employees, and that the fifty cents taken each month from their wages went to pay the premium. The policy was not introduced in evidence, a fact mentioned in the former opinion. We think there was sufficient evidence of the usage of the business of defendant in relation to its employees to justify the instruction.

4. Over defendant's objection plaintiff was permitted to testify that he had a conversation with Richardson, the superintendent, about three weeks after he had been injured; that Richardson came to see him and said he would' have come sooner but was trying to get plaintiff's half-time fixed up before calling; and that Richardson talked to him about a settlement for his lost time. If the evidence was introduced, as defendant insists, for the purpose of proving facts upon which to base an inference that defendant was estopped to claim the contract sued upon was never made or to deny Richardson's

authority to make such a contract, it was incompetent, because, manifestly, if the superintendent had no authority in the first place to bind the defendant by making the contract, his statements made long afterward would not amount to a ratification. "An agent can not, as a general rule, ratify an unauthorized act performed by himself so as to make his principal liable thereon." (31 Cyc. 1251.) When the testimony was objected to, plaintiff's counsel stated that it was offered merely to prove that a demand was made on defendant. The court admitted it for that purpose only. The testimony contained no reference to a demand, and, moreover, the plaintiff proved a written demand upon defendant long afterward, on July 10, 1913. It is difficult to discover in what way the testimony was competent, and it is urged that its admission was prejudicial because its effect was to lead the jury to believe that the alleged contract was made with defendant's authority. In view of the statement of the court that it was admitted solely for the purpose of showing a demand, we can not say there was prejudicial error in overruling the objection.

5. Mr. Richardson was dead when the case was tried the second time, and his testimony taken at the former trial was read in evidence. He had testified that he had no authority to make the contract sued upon and denied that he had made it. Mr. Herron, who succeeded him, and who for several years had been his assistant, was a witness, and testified that he knew the authority possessed by Richardson as superintendent. He was asked whether his authority as superintendent was the same as Richardson's had been, to which the court sustained the objection that the question called for a comparison and conclusion of the witness. It is claimed this was error. From the abstract it appears there was no showing on the motion for a new trial what his answer would have been. Error can not be predicated. (Civ. Code, § 307.)

6. It is insisted there was no competent evidence to establish the authority of Richardson to make the contract. "Where general authority is established and the act of the agent is not shown to be of an unusual or extraordinary character, the presumption is that the agent had authority to do such act." (31 cyc. 1644.) It was recognized in the former opinion that a railroad company has the incidental power to make con-

tracts of this character with its employees. Richardson was shown to be the general superintendent in charge of the men, with power to employ and discharge them; the fact that he made the contract, which must be taken as established notwithstanding the conflict in the evidence, and the fact that the company for several years retained out of plaintiff's wages the monthly payment, together with the fact that the company has not offered to return any part of it, were we think, sufficient to justify a finding of implied authority in the superintendent to make the contract.

7. We come now to the principal contention of defendant. It is said that prior to the enactment of the federal employers' liability law, contracts were often entered into whereby, in consideration of insurance or indemnity benefits agreed to be paid by the railroad companies for loss of time occasioned by injuries in the service, the injured employee released the employer from all liablity for damages resulting from such injuries; that in order to prevent the making of such contracts congress enacted section 5 of the amendment to the liability law, which is pleaded in the answer herein. Section 5 reads:

"That in any action brought against any such common carrier under or by virtue of any of the provisions of this act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought." (Part 1, 35 U. S. Stat. at Large, ch. 149, § 5, p. 66; 8 U. S. Comp. Stat. 1916, § 8661.)

In view of "the old law, the mischief and the remedy," it is claimed that while it was the intention of congress to prevent the making of such contracts, or rather to prevent their interposition as a defense to an action under the employers' liability law, it was also the purpose to permit the amount of any damages recovered in such an action to be reduced to the extent of any sum paid or contributed by the railroad company for insurance, relief benefit, or indemnity. The action in Missouri was based upon the acts of congress referred to. The defendant had no knowledge or notice, it is said, of the intention of plaintiff to look to it for payment of this indemnity or insurance in time to plead the amount as a set-off in the former action; and, since it could not have been interposed as a defense, but only as a set-off in that action, it is

therefore available as a defense to the present action.  If
the defendant is correct as to the construction to be given
to section 5 of the federal act and its application to the contract
sued upon, the cases of *Boyd v. Huffaker*, 40 Kan. 634, 20 Pac.
459, and *Clifton v. Meuser*, 88 Kan. 408, 129 Pac. 159, are
authorities which uphold defendant's contention of a right to
interpose the set-off here, because the set-off is not barred by
the former judgment since it was not available as a defense
and could have been relied upon only to reduce the amount
of the judgment in that action.

In *Atlantic Coast Line R. Co. v. Dunning*, 166 Fed. 850, it
was held that if an employee takes the benefit of a relief
department he thereby releases the railroad company from
all liability for his personal injuries occasioned by the com-
pany's negligence.  The case, however, was decided upon facts
wholly dissimilar to those in the case at bar.  By the terms
of his contract Dunning agreed to release the railroad company
from all liability for injuries sustained in the service.  We
have no way of determining that the contract sued on here
contained any provision for releasing the defendant from lia-
bility for such loss of time.  We know nothing concerning the
provisions of the oral contract save as testified to by the
plaintiff.  The defendant claims that all it ever agreed to do,
and all that Richardson was authorized to do or did, was to
arrange to take out for the benefit of plaintiff and his fellow
employees a policy of insurance covering any loss of time
occasioned by injuries in the service and limited to the fifty-
two weeks following the injury.  But, as before observed, the
defendant did not introduce the policy in evidence, and if it
had done so the policy would not have disproved absolutely
the plaintiff's claim of what the terms of his oral contract
were.  We can not assume that the arrangement between
Richardson and the plaintiff bound the plaintiff to release de-
fendant from all liability for injuries caused by defendant's
negligence.  So, in the state of the record, we are unable to
declare that section 5 of the amendment to the acts of con-
gress, upon which defendant bases this contention, has any
application to the facts of this case, or could have been used
as a ground for claiming the set-off in the Missouri action,
even though defendant had been aware of plaintiff's intention
to assert the claim sued on here.

The defendant insists that "regardless of whether a contract contains such a provision, a railroad is liable for damages under the federal statute, on the condition, however, that the railroad is entitled to set-off to the amount of the insurance, relief benefit, or indemnity, which such railroad has paid or is bound to pay." The argument in support of this contention is ingenious but not persuasive. We quote:

"It is true there was no such provision in said contract; but such a provision would have been illegal and void, after the passage of said Federal Act of 1908, so that if the contract had contained such a provision, it would have been a provision which the courts would ignore, consequently it is entirely immaterial whether such contracts for insurance, etc., contain such provisions. Such a provision in contracts for insurance, etc., can not be considered, therefore it is not material to the question of a *set-off* whether such a provision is or is not contained in contracts for insurance."

It is true, the fact that a railroad company may not have intended to evade the federal statute does not affect the validity of the contract. This is the effect of the decisions declaring such contracts releasing railroads from liability void whether made *before* or *after* the federal statute was enacted. If the contract operates so as to defeat the statutory liability, it is void regardless of the intent of the parties. But it does not follow, we think, that the company is entitled to a set-off in cases where the contract contains no provision for releasing the company from liability. Nor do we think that this construction of the federal statute has the effect of offering to the company a reward or inducement for *attempting* to avoid its statutory liability, and denying the same reward to another company for not attempting to avoid its liability under the statute. The statute declares that all contracts for the payment of insurance, relief benefits or indemnity where the purpose is "to enable any common carrier to exempt itself from liability created by this act, shall to that extent be void," coupled with the provision allowing a set-off for any sum paid or contributed by the carrier on account of the injury for which the action is brought. In *Phila., Balt. & Wash. R. R. v. Schubert*, 224 U. S. 603, it was decided that it made no difference whether the contract for the insurance was made with the actual intent of the parties to circumvent the statute, if the effect of the contract would operate so as to defeat the lia-

bility created by the statute. If congress had intended to give the set-off in all cases, regardless of the character of the contract, appropriate words would doubtless have been found to express that intent. As we construe the statute, the proviso applies only to contracts which enable the carrier to relieve itself of further liability.

Besides, the contract in this case was one of insurance pure and simple, by which the company in consideration of the payment by plaintiff of a premium each month guaranteed to pay plaintiff for loss of time for a certain period upon certain conditions. It did not provide that plaintiff should accept his insurance in case of injury in lieu of his right to hold defendant for liability for the same injuries on the ground of defendant's negligence; and as said in the former opinion:

"The cause of action on the contract and that on the tort are entirely different and are independent of each other. The one is founded upon an agreement to pay a fixed amount (or an amount to be arrived at by a fixed standard) if disability is occasioned by an injury; the other is founded upon the obligation of a wrongdoer to make amends for the result of his misconduct. The circumstance that the same corporation happens to be charged both upon the contract and upon the tort does not affect the essential character of its liability in either aspect, or take the case out of the operation of the general rule." (*McAdow v. Railway Co.*, 96 Kan. 423, 426, 151 Pac. 1113.)

For these reasons we conclude that defendant can not urge the set-off, and that there was no error in refusing the instructions asked upon that branch of the case.

The judgment is affirmed.