No. 21,454.

THE J. I. CASE PLOW WORKS, *Appellant,* v. H. O. THORNE,
*Appellee.*

SYLLABUS BY THE COURT.

SALE OF PLOW—*Proposition by Correspondence—No Acceptance—No
Contract—Authority of Plaintiff's Salesman.* After appointing de-
fendant its local dealer to sell its plows, plaintiff wrote him proposing
to ship him a certain plow it had previously sold in his territory
through its traveling salesman and to charge him the wholesale
price, with directions that upon delivering the plow he should make
settlement in his favor with the purchaser and take the latter's
notes, which would leave him a small profit. The letter concluded
with the statement, "and unless we hear from you to the contrary, will
proceed as above." The defendant made no reply to the letter, and
plaintiff shipped him the plow and charged his account with the
price. Before the plow was delivered, defendant notified the travel-
ing salesman that he would have nothing to do with the transaction,
but agreed at the request of the salesman to receipt for the plow and
turn it over to the purchaser, which he did. In an action against the
dealer to recover the purchaser price, *held,* that the evidence was
sufficient to sustain a finding of apparent authority in the traveling
salesman to make the arrangement carried out, and that the contract
sued upon never became effective, because there was no acceptance
of the proposition for the purpose stated in the letter.

Appeal from Kingman district court; GEORGE L. HAY, judge.
Opinion filed April 6, 1918. Affirmed.

*S. S. Alexander,* of Kingman, for the appellant; *Edgar C.
Ellis, Hale H. Cook, Roy K. Dietrich,* and *Raymond G.
Barnett,* all of Kansas City, Mo., of counsel.

*John H. Connaughton,* and *H. E. Walter,* both of Kingman,
for the appellee.

The opinion of the court was delivered by

PORTER, J.: On June 10, 1915, Ira L. Haynes, a traveling
salesman of the J. I. Case Plow Works, sold an engine plow
to P. P. Jones, a farmer of Kingman county; the order for the
plow being on a written form which provided that the con-
tract should not be binding until it was accepted by the plain-

tiff. About the same time the traveling salesman made an arrangement with the defendant, H. O. Thorne, who was engaged in the hardware and implement business at Norwich, by which Thorne became the local dealer for the plaintiff.

On June 25, the plaintiff wrote the following letter to Thorne:

"We attach letter which we are writing to Mr. P. P. Jones of Belmont, Kansas.

"Mr. Haynes has just advised us that he wishes you to make the profit on this deal, so we want you to understand it thoroughly. In shipping this plow we will bill it to you at $460.00 with extra shares, terms, Nov. 1st, or 7½% for cash September 1st. Upon delivering the plow you can make settlement in your favor with Mr. Jones, and since his notes are to draw 8% interest from September 1st, you will see the deal will carry itself. Now, as a matter of fact, the margin in this deal is small, only $34.50, but if Mr. Jones' paper is good, feel sure you will be satisfied with the deal, and unless we hear from you to the contrary, will proceed as above."

On the same day plaintiff wrote to Jones as follows:

"Mr. Haynes has just forwarded us your letter of the 23rd, in which you ask that we reinstate your order, and we beg to advise that we are doing so.

"Our understanding of the order is that you want our Lever Left Engine Gang Plow, equipped with 8, 14″ Bottoms with extra shares, price, f. o. b. Kansas City, to be $460.00. Terms, ½ December 1st, 1915, ½ December 1st, 1916, with 8% interest from September 1st, 1915. We will proceed with the order and make shipment July 1st, or prior to that date if possible. For your convenience we will arrange to ship this through our agent Mr. H. O. Thorne of Norwich, Kansas, who will be glad to handle the delivery and settlement for you."

Receiving no reply from the defendant, the plaintiff shipped to him the plow it had sold to Jones. When the plow arrived at Norwich, Jones came in to receive it, and the defendant advanced the freight, receipted for the plow, and turned it over to Jones, who reimbursed him for the freight. In the fall of 1915, Jones wrote plaintiff that he would not be able to pay more than $100 on the purchase price and would require time for the balance. The plaintiff thereupon brought this action against Thorne, the local dealer, to recover the purchase price, on the theory that by his failure to reply to their letter of June 25 and his having receipted to the railway company for the plow when it arrived at Norwich, he became liable upon the terms stated in the letter.

In addition to the general denial in the answer the defendant alleged that the plow was sold to Jones upon a written order given to the authorized agent of the plaintiff and accepted by plaintiff; that he had nothing to do with the sale of the plow and did not receive it, but that it was received by Jones and the freight paid by Jones; that defendant had notified the agent of the plaintiff that he would have nothing to do with the transaction, would not accept the plow, nor be held responsible for the price; that thereupon the agent of the plaintiff agreed that the plaintiff would look to Jones for payment, and afterwards went to Jones and made a settlement with him in regard to the payment. The verified reply denied that Haynes was authorized to make any change in the terms of the proposed contract.

At the trial the station agent at Norwich produced the freight records showing that the freight charges had been paid by check signed in Thorne's name, and testified that the plow was delivered to Thorne, but the witness was unable to find the receipt. On cross-examination he stated that Sipes, a clerk in the employ of Thorne, usually transacted the business with the railway and wrote the check and signed the original freight bill; that Jones unloaded the freight; and that in a conversation Thorne told him the plow was for Jones. The defendant testified that Jones reimbursed him for the freight; that at the time he accepted the appointment as local dealer, Haynes wanted him to take over the deal with Jones for the plow he had sold, but he refused at that time to have anything to do with the transaction because the plow had been sold at wholesale price, and there was not enough in it to pay him to bother with it. He testified that after receiving the letter of June 25, and before the plow arrived, Haynes was there, and he told Haynes he would have nothing to do with the plow because the sale had been made before he took the agency; that Haynes said, "they probably would ship the plow to me anyway, being I was the agent there"; that he again told him he would have nothing to do with it; and that Haynes then asked him to see that Jones received the plow; that sometime after the plow had been delivered to Jones, Haynes was in Norwich again, and said he had been out to see Jones for the purpose of settling; that Jones had been too busy with harvesting to try

out the plow, but he intended to see him again and settle. The testimony of the defendant is somewhat confusing respecting the dates of the several conversations he claims to have had with the traveling salesman, but he testified that there were several conversations, and that the one in which he was authorized to turn the plow over to Jones was after the letter had been received and before the plow was delivered.

Mr. Sipes, defendant's clerk, testified that he was present at a conversation after the letter of June 25 and before the plow was received, in which Haynes told the defendant that this plow would more than likely be shipped to him on account of his taking the agency, and for him to see that Mr. Jones got it anyway, even if he did not take over the deal. He further testified that he was present when Haynes came to make a settlement with Mr. Jones, and heard his statement why the settlement had not been effected and that he would try again in the near future. So there was testimony which justified the jury in finding that the defendant notified the company through its traveling salesman that he would not be bound by the terms of the company's letter, and that in receipting for the plow and turning it over to Jones he was carrying out the instructions of the traveling salesman who had sold the plow to Jones.

The testimony of the principal witness of the plaintiff, who was the manager of the Kansas City, Oklahoma City and Denver branch offices, respecting the duties and authority of the traveling salesman Haynes, is very unsatisfactory and seems to be lacking in frankness; or perhaps the witness did not know what authority the agent possessed. He testified that Haynes was employed as a special salesman only, and not to look after collections; had never made any collections, and was not authorized to do so. Asked if he had authority to make such contracts as the one in question, he testified that he had authority to write orders and submit them to the company; that to the knowledge of the witness he was never sent out to make settlements and collections at any time. Asked if he had made the contract with defendant Thorne, he replied:

"A. I will say that Mr. Haynes was not employed to make contracts with our regular dealers.

"Q. Well, he did make a contract with Mr. Thorne, did n't he, as a regular dealer? A. Mr. Thorne was not a dealer of ours at the time.

Mr. Haynes made the contract. . . . No, he was out to call on dealers—new dealers—dealers we did n't have. Prospective dealers, I will say. That was his duty. That was the reason he was not a territory man. He was to call on anyone; get new trade for us and he was to have a commission.

.    .    .    .    .    .    .    .    .    .    .

"Q. His duty was to make sales?  A. Yes, sir.

.    .    .    .    .    .    .    .    .    .    .

"Q. General authority along that line?  A. Well, I don't know what you mean by general authority. He was out to sell goods and submit his orders.

"Q. By the Court. He was out to sell goods for your company. He was authorized to sell goods?  A. He had the prices and terms and order blanks and of course he was to keep on selecting dealers for us and help them make sales possibly with consumers and then submit to us.

.    .    .    .    .    .    .    .    .    .    .

"Q. Was the authority in writing from your company?  A. No, I can't say it was.

"Q. Who employed him?  A. I employed him. . . . He was only to do special work for us for a short time. He was not a regular representative. We have regular representatives stationed here and there but he represented to us that he could get a certain class of business that we were not getting, and I employed him as a special man on a commission basis to get out and get that and he was to submit his order and if passed we would place them in.

"Q. If he should procure an order from an individual how was the deal closed?  A. You mean consumer or dealer?

"Q. Farmer.  A. We would call that cancelled. We always operate that through the dealer. In selling an article to a consumer then he need or need not submit us that order. We should submit it to the dealer, I should say."

Continuing his direct examination, he was asked if he had authority to make deals with consumers, such as Mr. Jones. He replied:

"A. No, we did not employ him to call on consumers. Our business relations are entirely with dealers. With the dealer, I will say, and any time any of our salesmen wish to assist in helping our dealers to sell to a consumer, we are glad to do that.

"Q. He had authority, did he, to assist your dealer in making a sale to a consumer?  A. That much. We are glad to line in a consumer and assist if we can.

"Q. He had that authority?  A. I don't know as I authorized him.

"Q. Don't you, as a matter of fact, employ him to do that and accept the benefit of his services in so doing?  A. It is the custom with us.

.    .    .    .    .    .    .    .    .    .    .

"Q. Thorne was not a dealer at the time you took this contract from

Jones? . . . A. Yes, sir, he had made a contract with Mr. Haynes two days prior to the time that Mr. Haynes sold the plow to Mr. Jones.

"Q. Mr. Haynes still had authority to sell to Mr. Jones even though Mr. Thorne was not an agent? A. Mr. Haynes did n't have authority to sell to anyone. He had authority to submit his orders.

. . . . . . . . . . .

"Q. Mr. Haynes had full authority to do what he did do there with reference to the Jones matter? A. Well, I would n't say that we authorized him to do that but at the same time there was no objection to his going out and selling Mr. Jones that plow."

Since there was evidence to sustain defendant's contention that before the plow was received, and before he accepted the written proposition, he was directed by the traveling salesman to receipt for it and see that Jones got it, the only remaining question is whether there was evidence to warrant the jury in finding that the traveling salesman had authority to make this arrangement. At the time the arrangement was made there was no contract in existence. There was a written offer on certain terms, requiring the defendant's acceptance before it would become a contract. In the meantime the traveling salesman who had made the sale in the first place, and had already been informed that defendant would have nothing to do with the transaction, was notified again that defendant would not accept the terms of the proposition contained in the company's letter, and he directed the defendant to receive the plow and turn it over to Jones. In view of the fact that he was the agent who represented the company in appointing the defendant local dealer, and had made the sale or preliminary arrangements for a sale with Jones, it would be quite natural for the defendant to assume, without question, that he had sufficient authority to authorize him to accept the plow and turn it over to Jones. Nowithstanding the manager of the Kansas City branch stated in his testimony that Haynes had no such authority, his testimony, taken all together, indicates that he was not very well informed himself just what was Haynes' authority as agent. In fact, we think it justified the jury in finding that Haynes had authority to do the very thing he did. Before the contract sued upon became effective there had to be an acceptance by the defendant of the terms proposed, and the acceptance, of course, must have been for the purpose comprised in the offer. No limitation of the agent's authority was disclosed, and apparent

and not actual authority is what is controlling in such a case. (*Aultman v. Knoll,* 71 Kan. 109, 114, 79 Pac. 1074.) We think the acts of Haynes in this case were within the apparent scope of his authority. (*McAdow v. Railway Co.,* 100 Kan. 309, 164 Pac. 177.) The plaintiff was not entitled to the peremptory instruction asked; and the instructions requested were predicated upon the wrong theory with respect to agency, and did not make clear the distinction between apparent and actual authority. Either character of agency, of course, may be proved by circumstantial evidence. The instructions which the court gave fairly stated the law, and since we find no error in the record, the judgment is affirmed.